IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| | : | |
| Debtor. | : | Hearing Date: 9/15/04 at 9:30 a.m. |
| | : | Objection Deadline: 9/3/04 at 4:00 p.m. |

**MOTION PURSUANT TO §§ 105(a) AND 363 OF THE
BANKRUPTCY CODE AUTHORIZING DEBTOR TO TERMINATE
CERTAIN NON-QUALIFIED RETIREMENT PLANS**

NorthWestern Corporation, a Delaware corporation ("NOR" or the "Debtor"), hereby moves this Court (the "Motion"), pursuant to §§ 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), for the entry of an order authorizing it to terminate three of its non-qualifed retirement plans, which are described below. In support of this Motion, the Debtor respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and this Motion are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.     Commencement of the Chapter 11 Case**

2. On September 14, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor

WDC /280232.4

continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner in this case. The Official Committee of Unsecured Creditors was appointed by the Office of the United States Trustee on September 30, 2003.

B. **Background of the Debtor**

4. NOR is a publicly traded Delaware corporation which was incorporated in 1923. NOR and its direct and indirect nondebtor energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 598,000 customers throughout Montana, South Dakota and Nebraska.[1]

## TERMINATION OF CERTAIN NON-QUALIFIED RETIREMENT PLANS BENEFITTING EXECUTIVES AND DIRECTORS

5. By this Motion, NOR seeks an order of this Court authorizing it to terminate the following non-qualified retirement plans[2] that it has previously provided to its executives and members of its Board of Directors:

   a. NorthWestern Corporation Traditional Pension Equalization Plan ("TPEP");

   b. NorthWestern Energy Executive Long-Term Incentive Plan ("LTIP")

   c. NorthWestern Corporation Cash Balance Supplemental Executive Retirement Plan ("CB SERP").

---

[1] For a more extensive overview, see the Affidavit of William M. Austin in Support of First Motions (Docket Entry No. 2).
[2] With one exception, the Debtor intends to assume the remainder of the its non-qualified retirement plans, as set forth in the Notice of Intent to Assume Non-qualified Retirement Plans. The Debtor intends to terminate the Montana Power Company Benefit Restoration Plan for the Board of Directors, which will be addressed in a separate motion.

### A. NorthWestern Corporation Traditional Pension Equalization Plan

6. The TPEP, a copy of which is attached as <u>Exhibit A</u>, provides supplemental retirement benefits for select executives of the Debtor identified in the TPEP plan document. As of the Petition Date, Merle Lewis ("Lewis") was the sole TPEP participant, and NOR ceased making payments under this plan on or about October 1, 2003. Lewis's monthly supplemental retirement benefit is the difference between the amount that he would be eligible to receive under the Debtor's qualified pension plan without regard to limits imposed by Sections 401(a)(17) and 415 of the Internal Revenue Code of 1986, as amended (the "IRC"), and the amount he actually receives from the qualified pension plan.[3]

7. NOR "reserves the right to amend or terminate the [TPEP] when, in the sole opinion of the [Debtor], such amendment or termination is advisable." <u>See</u> Section 6.1 of the TPEP. However, "no amendment or termination of the [TPEP] shall directly or indirectly deprive any current or former Participant, Surviving Spouse, or Beneficiary of all or any portion of any Supplemental Retirement Benefit or Supplemental Death Benefit payment which has commenced prior to the effective date of such amendment or termination or which would be payable if the Participant terminated employment for any reason, including death, on such . . . date." <u>See</u> Section 6.2 of the TPEP. The Debtor's remaining obligation to Lewis under the TPEP represents obligations the Debtor had incurred prior to the Petition Date.

8. The TPEP is unfunded and all liabilities associated with the plan represent general unsecured obligations of NOR.

---

[3] Commencement and form of the benefit is identical to the commencement and form of benefit that the participant elects under the Debtor's qualified pension plan.

9. Set forth below is a table showing the present value of Lewis's benefit under the TPEP.

| Participant Receiving Benefits on the Petition Date | Present Value of Plan Benefit as of 11/1/03 | Bankruptcy Claim Filed Seeking Payment under TPEP |
|---|---|---|
| Lewis, Merle | $3,626,086 | Claim # 489 |

10. NOR is currently liable for approximately $3,626,086 under the TPEP, which is the present value of the participant's non-forfeitable benefit calculated as of November 1, 2003. The present value of the TPEP liability is calculated using a discount rate of 6% as of November 1, 2003 because Lewis received payments pursuant to the TPEP through October 31, 2003. NOR seeks to terminate the TPEP in order to reduce future costs by approximately $3,626,086. As such, upon termination Lewis will receive an unsecured Class 9 claim in the amount of $3,626,086.

B. **NorthWestern Energy Executive Long-Term Incentive Plan**

11. The LTIP, a copy of which is attached as Exhibit B, has a term running from February 1, 2002 through December 31, 2006 (the "Plan Period"). The LTIP awards a designated percentage of the increased value in NorthWestern Energy Group ("NWE") over the Plan Period to participants. There are only two (2) active participants in the LTIP; Glenn Her ("Herr") and David Monaghan ("Monaghan"). All other participants who are current employees of the Debtor waived their rights under the LTIP in favor of participation in the NorthWestern Corporation Incentive Compensation and Severance Plan.[4]

12. Under the terms of the LTIP, increased value of NWE is measured through references to the operating income of NWE and the stock performance of the

---

[4] The Court approved the Debtor's Motion to implement the NorthWestern Corporation Incentive Compensation and Severance Plan on February 3, 2004.

Debtor. The total LTIP benefit is independently calculated on each factor in equal proportion. Vesting in the percentage of increased value occurs at a rate of 6.25% per quarter. Thus, participants become vested in 25% of the benefit accrued under the LTIP on December 31 of each year, starting with 2002. Payments of the fully vested amount, less any previously paid amounts, are to occur as soon as practicable following December 31st of 2004, 2005, and 2006. As such, no payments have been made under the LTIP.

13. Per the section of the LTIP titled 'Termination of Employment,' "if a participant terminates employment with the [Debtor], he or she will be paid out for any vested benefit calculated as of the end of the prior calendar year using the NorthWestern Corporation stock price as of December 31st of that year."

14. Herr terminated employment with NOR on August 11, 2003. Monaghan terminated employment with NOR on July 16, 2003. Thus, the value of their vested and accrued benefit under the LTIP will be calculated as of December 31, 2002, using NOR stock price on that date.

15. Per the section of the LTIP titled 'Plan Amendment and Termination,' NOR "reserves the right to change, amend, or terminate the [LTIP] at any time by providing written notice to participants." The value of the obligations NOR has incurred under the LTIP is $3,000. This obligation represents debts incurred prior to the Petition Date. The LTIP is unfunded and all liabilities associated with the plan represent general unsecured obligations of NOR.

16. Set forth below is a table identifying the LTIP participants and the value of their benefit under the LTIP as of September 14, 2003.

| Participants Remaining in the Plan | Value of Plan Benefit as of 9/14/03 | Bankruptcy Claim Filed Seeking Payment under LTIP |
|---|---|---|
| Herr, Glenn | $2,000 | Claim # 960 |
| Monaghan, David | $1,000 | Claim # 805 |
| **Total:** | **$3,000** | |

17. Because the remaining LTIP participants terminated prior to the Petition Date, no further benefits will accrue under the LTIP. NOR projects it will be liable for approximately $3,000 in payments to the participants in the LTIP upon effectuation of the termination. This represents each participant's vested interest in the increased value of NWE (which is designated in the LTIP plan document) multiplied by the incremental value of NWE on December 31, 2002.[5] Because NOR stock declined in value over the Plan Period, the participants did not accrue a benefit for the stock component of the LTIP.

18. As such, Herr will receive a Class 9 unsecured claim in the amount of $2,000 and Monaghan will receive a Class 9 unsecured claim in the amount of $1,000. These claim amounts represent each participant's vested and accrued benefit as of December 31, 2002. Both Herr and Monaghan may elect Class 10 convenience class treatment and receive a cash payment on the effective date of the Debtor's Plan of Reorganization.

C. **NorthWestern Corporation Cash Balance Supplemental Executive Retirement Plan**

19. The CB SERP, a copy of which is attached as <u>Exhibit C</u>, provides supplemental retirement benefits to those executives of the Debtor who earn a salary in

---

[5] Herr and Monaghan were awarded an LTIP benefit based upon a 0.134% interest and a 0.097% interest, respectively, in the increased value of NWE. On December 31, 2002, the incremental value of NWE was $7,721,000. Thus, each participant's benefit is determined by multiplying his percentage interest by the incremental value, 25% (because participants are only 25% vested in their benefits on 12/31/02), and 50% (because 50% of the LTIP plan benefit is based upon the increased value of NWE).

excess of the compensation limit imposed on the benefits under NOR's qualified pension plan by Sections 401(a)(17) and 415 of the IRC and who participate in the cash balance provisions of that plan.[6]

20. Each of the eight (8) current participants has a supplemental cash account under the CB SERP, which accrue supplemental pay and interest credits on the last day of each plan year. The amount of supplemental pay credit is determined in accordance with a schedule set forth in the CB SERP plan document, and is based on (i) the sum of the participant's age and service with the Debtor as of December 31, 1999, and (ii) the participant's salary that is in excess of the applicable IRC Section 401(a)(17) limit for the applicable year. The amount of supplemental interest credit is determined by multiplying the participant's supplemental cash account balance as of the close of the immediately preceding plan year by the annual interest rate on 30-year Treasury securities in November of the immediately preceding plan year.

21. Participants in the CB SERP may select among the following forms of benefit: single life annuity, joint and survivor annuity, life and ten-year certain annuity, lump sum payment, and monthly installments over a period of five to twenty years. If a participant dies prior to beginning to receive benefits under the CB SERP, his beneficiary receives a supplemental death benefit that is based upon the value of the participant's supplemental cash account at the time of his death.

22. NOR "reserves the right to amend or terminate the [CB SERP] when, in the sole opinion of the [Debtor], such amendment or termination is advisable." See Section 6.1 of the CB SERP. However, "no amendment or termination of the [CB SERP] shall directly or indirectly deprive any current or former Participant, Surviving

---

[6]    Participation in the TPEP and the CB SERP are mutually exclusive.

Spouse, or Beneficiary of all or any portion of any Supplemental Retirement Benefit or Supplemental Death Benefit payment which has commenced prior to the effective date of such amendment or termination or which would be payable if the Participant terminated employment for any reason, including death, on such . . . date." See Section 6.2 of the CB SERP. All eight (8) current CB SERP participants are entitled to receive benefits under the CB SERP as of the Petition Date, but because none are retired, NOR has not made any payments under this plan.

23.  The value of the remaining obligations NOR has incurred under the CB SERP as of September 14, 2003 is $677,439. This represents the sum of each CB SERP participant's account balance on September 14, 2003. This obligation represents debts incurred prior to the Petition Date. The CB SERP is unfunded and all liabilities associated with the plan represent general unsecured obligations of NOR.

24.  Set forth below is a table identifying the CB SERP participants and the value of their account balances as of September 14, 2003.

| Participants Remaining in the Plan | Value of Plan Benefit as of 9/14/03 | Bankruptcy Claim Filed Seeking Payment under CB SERP |
|---|---|---|
| Hanson, Michael | $334,038 | Claim # 660 |
| Jacobsen, Eric | $26,873 | Claim # 567 |
| Monaghan, David | $601 | Claim # 805 |
| Newell, Daniel | $93,202 | NONE |
| Thielbar, Bart | $430 | NONE |
| Trandem, Gregory | $208,506 | Claim # 623 |
| Van Camp, John | $11,128 | NONE |
| Younger, Christopher | $2,661 | NONE |
| Total: | $677,439 | |

25.  If the CB SERP is not terminated, participants will continue to accrue benefits pursuant to the plan.

26. NOR seeks to terminate the CB SERP in order to stop further accrual of liability under the plan.

27. Upon termination, CB SERP claimants will receive Class 9 unsecured claims. Those participants choosing to do so may elect Class 10 convenience class treatment and accept cash distributions of up to $20,000.

### D. Savings Resulting from Termination

28. NOR seeks to terminate the TPEP, LTIP, and CB SERP (together, the "Plans") to eliminate the costs associated with administering the Plans and to extinguish its future obligations under such plans. Termination of the Plans is in the best interests of the Debtor, its estate, and its creditors, as it will relieve NOR of liabilities of approximately $4,306,525.

29. The Debtor seeks to terminate the Plans as of the Petition Date. Termination of the Plans will result in all Plan participants receiving Class 9 unsecured claims equal to the value of their accrued benefit under the applicable plan as of the Petition Date, less any benefit payments they have subsequently received.[7] See In re Farmland Indus., Inc., 294 B.R. 903, 915 (Bankr. W.D. Mo. 2003). Termination of these plans will also allow the Debtor to consolidate its executive and director benefit plans into a more uniform and cohesive program upon its emergence from bankruptcy.

## APPLICABLE AUTHORITY

### A. The Applicable Legal Standards With Respect to Termination of the TPEP, LTIP, and CB SERP

---

[7] Some participants in the CB SERP may be entitled to an administrative priority claim of up to $4,650 pursuant to 11 U.S.C. § 507(a)(4) if they elect Class 10 convenience class treatment. If all participants elect Class 10 convenience class treatment, the maximum amount the Debtor will be required to pay as administrative priority claims is $26,942. This equals 5 x $4,650 (for each of the 5 participants whose cash payment would exceed $4,650) plus $3,692 (the sum of the remaining 3 participants' account balances as of September 14, 2003).

30. The TPEP, LTIP, and CB SERP constitute "property of the estate" of the Debtor within the meaning of Section 541 of the Bankruptcy Code. 11 U.S.C. § 541. Pursuant to Section 363(c) of the Bankruptcy Code, NOR may use property of the estate in the ordinary course of its business without notice or a hearing. 11 U.S.C. § 363(c). NOR's termination of benefits under the Plans constitutes the use of estate property in the ordinary course of NOR's business.

31. The legal standard that applies to the termination of the Plans pursuant to Section 363(c) is a "business judgment" standard that is very similar to the standard used to evaluate rejection or assumption of executory contracts pursuant to Section 365 of the Bankrupcty Code. See In re Farmland Indus., 294 B.R. at 913. In the context of Section 365, this standard is satisfied when a debtor shows that rejection of the executory contract will benefit the estate. See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp., 872 F.2d 36, 39-40 (3d Cir. 1989) (bankruptcy court properly granted debtor's motion to reject executory contract upon finding that the rejection would benefit the estate); In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) ("Under the business judgment standard, the sole issue is whether the rejection benefits the estate."); see also In re Farmland Indus., 294 B.R. at 913. If the debtor's business judgment is reasonably exercised, a court should approve the assumption or rejection of an executory contract. See, e.g., In re Federal Mogul Global, Inc. T&N Limited, et al., 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); In re HQ Global Holdings, 290 B.R. at 511 ("A

debtor's determination to reject an executory contract can only be overturned if the decision was the product of bad faith, whim or caprice.").

33.     Furthermore, Section 105(a) of the Bankruptcy Code provides this Court with the power to "issue any order . . . that is necessary to carry out the provisions of this title". 11 U.S.C. § 105(a). The actions and relief NOR seeks through this Motion are necessary and appropriate to carry out the purposes and provisions of the Bankruptcy Code.

### B. Section 1114 of the Bankrupcty Code Does Not Apply With Respect to Termination of the TPEP, LTIP, or CB SERP

33.     Pursuant to Section 1114(e) of the Bankruptcy Code, a Chapter 11 debtor "shall timely pay and shall not modify any retiree benefits, except" upon an order from the Bankruptcy Court following notice and a hearing or upon mutual agreement between the debtor and an authorized representative of the recipients of the benefits to modify such benefits. See 11 U.S.C. § 1114(e).

34.     "Retiree benefits" are defined in Section 1114(a) as "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." 11 U.S.C. § 1114(a).

35.     The TPEP, LTIP, and CB SERP do not fall within the reach of Section 1114(a) because they do not provide "retiree benefits" as defined by that section. Section 1114(a) does not apply to the LTIP or the CB SERP because none of the

participants in these plans are currently retired and receiving benefits pursuant to this plan. By its terms, Section 1114 applies only to benefits offered to *retired* employees.

36.   Nor does Section 1114(a) apply to the TPEP.[8] This plan provides supplemental pension payments during retirement, which is not the form of payment included within the definition of "retiree benefits"[9]. See Farmland, 294 B.R. at 919 (plans that provide deferred compensation benefits or benefits based on retirement are not "retiree benefits" as defined in Section 1114(a) and therefore do not fall within the coverage and provisions of Section 1114); see also Susan J. Stabile, Protecting Retiree Medical Benefits in Bankruptcy: The Scope of 1114 of the Bankruptcy Code, 14 Cardozo L. Rev. 1911, 1931-2 (1993) (benefit plans are covered by Section 1114 if they qualify as an "employee welfare benefit plan" under Section 3(1) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(1) ("ERISA")). The TPEP is not an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA.

37.   Moreover, all of the participants in the TPEP, LTIP, and CB SERP are current or former executives, highly-paid employees, or directors, and are sophisticated business people. More than sixty percent (60%) of the participants in the Plans are represented by counsel and/or filed claims relating to their benefits under the applicable plan(s). Each of the plan participants and their counsel will receive notice of this Motion and will continue to have an opportunity to object and protect their interests.

---

[8]   If participants in the CB SERP were retired, these plans would nevertheless be outside the scope of Section 1114(a) because they provide supplemental pension benefits during retirement.
[9]   Though the TPEP (and CB SERP) provide a supplemental death benefit to a beneficiary if the participant dies prior to commencing benefit payments pursuant to the applicable plan, the death benefit is an incidental benefit. Most pension plans qualified under Section 401(a) of the IRC contain an incidental death benefit similar to those provided under the TPEP (and CB SERP), and the provision of such a death benefit does not cause the plan to lose its status as a qualified pension plans. See Treas. Reg. § 1.401-1(b)(1)(i). Furthermore, Section 1114 has never been held to apply to traditional pension plans. See Adventure Resources, Inc. v. Holland, 137 F.3d 786, 795 (4th Cir. 1998) (Section 1114(a) does not apply to

Section 1114(e) essentially outlines a procedure whereby a debtor informs retirees of its desire to stop providing retiree benefits. Thus, NOR submits that it has dealt with the termination of the TPEP, LTIP, and CB SERP in a manner that substantially complies with Section 1114(e).

## TERMINATION OF THE TPEP, LTIP, AND CB SERP IS IN THE BEST ECONOMIC INTERESTS OF THE DEBTOR

38. The Debtor has determined, through exercise of its reasonable business judgment, that termination of the Plans will benefit the estate by significantly reducing its future cost under the TPEP and by eliminating any additional liability from being incurred under the LTIP and CB SERP. See In re Farmland Indus., 294 B.R. at 921-922 (debtor exercised sound business judgment in terminating executive supplemental retirement and deferred compensation plans because the debtor will be freed from paying $26 million under those plans).

## CONCLUSION

39. For the foregoing reasons and authorities in support thereof, the termination of the TPEP, LTIP, and CB SERP are appropriate under the circumstances. NOR has properly exercised its business judgment in determining that such actions are in the best economic interests of its estate and creditors.

40. NOR respectfully requests that this Court enter an order:

(i) authorizing NOR's termination of the TPEP as of September 14, 2003;

(ii) authorizing NOR's termination of the LTIP as of September 14, 2003;

(iii) authorizing NOR's termination of the CB SERP as of September 14, 2003;

---

pension trusts that provide only pension benefits to retirees).

(iv) granting such other and further relief as is just and proper.

## NOTICE

41. Notice of this Motion has been given to (i) the Office of the United States Trustee, (ii) counsel for the Debtor's Pre-Petition Lenders; (iii) counsel for the Debtor's proposed Post-Petition Lenders; (iv) Counsel for the Official Committee of the Unsecured Creditors; (v) the Securities and Exchange Commission; (vi) the Federal Energy Regulatory Commission; (vii) the Montana Public Service Commission; (viii) the South Dakota Public Utilities Commission; (x) the Nebraska Public Service Commission; (xi) each of the individuals identified herein and their counsel as identified in any claims filed in the bankruptcy proceeding; (xii) all participants in the Debtor's non-qualified retirement plans that are being terminated by this Motion or their counsel (if so represented); and (xiii) all other entities that have filed requests for notice pursuant to Bankruptcy Rule 2002; and to the Officers and the members of Group 1 (a) and Group 1 who have written agreements with the Debtor. The Debtor respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the relief requested herein is required.

## PRIOR RELIEF

42. No previous motion for the relief herein requested has been made to this or any other Court.

[CONCLUDED ON NEXT PAGE]

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order in the form annexed hereto, granting the relief requested herein and such other and further relief as the Court may deem appropriate.

Dated: Wilmington, Delaware
       August 31, 2004

                              Respectfully submitted,

                              PAUL, HASTINGS, JANOFSKY & WALKER LLP
                              600 Peachtree Street
                              Suite 2400
                              Atlanta, GA 30308
                              Jesse H. Austin, III
                              Karol K. Denniston
                              Telephone: (404) 815-2400

                              and

                              GREENBERG TRAURIG, LLP

                              _____
                              Scott D. Cousins (No. 3079)
                              Victoria Watson Counihan (No. 3488)
                              William E. Chipman, Jr. (No. 3818)
                              The Brandywine Building
                              1000 West Street, Suite 1540
                              Wilmington, DE 19801
                              Telephone: (302) 661-7000

                              *Co-Counsel for the Debtor and Debtor-in-Possession*